# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Application of<br><br>FOURWORLD EVENT OPPORTUNITIES, LP,<br><br>    Mourant Governance Services (Cayman) Ltd.<br>    94 Solaris Avenue,<br>    Camana Bay, PO Box 1348,<br>    Grand Cayman, KY1-1108, Cayman Islands<br><br>and GENESIS EMERGING MARKETS<br>INVESTMENT COMPANY<br><br>    80, Route d'Esch, L-1470,<br>    Luxembourg, Grand Duchy of Luxembourg<br><br>Petitioners, for an Order Pursuant to 28 U.S.C.<br>§ 1782 to Conduct Discovery for Use in a Foreign<br>Proceeding. | Case No.  Case: 1:22−mc−00018<br>Assigned To : McFadden, Trevor N.<br>Assign. Date : 2/3/2022<br>Description: Misc. (O−DECK) |

## APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

    1.    FourWorld Event Opportunities, LP and Genesis Emerging Markets LP ("**Petitioners**") respectfully request an order in the form attached hereto permitting Petitioners to obtain limited discovery under 28 U.S.C. § 1782 ("**Section 1782**") in connection with an appraisal proceeding pending before the Grand Court of the Cayman Islands (the "**Appraisal Proceeding**"), to which Petitioners are parties. In support of its application, Petitioners submit a Memorandum of Law and attach the Declarations of Duane Loft, Tyler Burtis, Marc Kish, and Justice Ingrid Mangatal. Petitioners further state as follows:

    2.    Petitioners seek the assistance of this Court to obtain discovery from Robert Dodds ("**Dodds**" or "**Respondent**"), who is "found" in this District for purposes of Section 1782. Petitioners' narrowly tailored requests (the "**Requested Discovery**") are set forth in the proposed

subpoena ("**Subpoena**") and schedules attached as **Exhibit 1** to the Loft Declaration and relate to the fair value of the shares of the company 58.com (**"58.com"** or the **"Company"**), held by Petitioners prior to a merger process that led to the squeeze-out of the Company's minority shareholders. As set forth in the accompanying declarations, the discovery cannot be obtained in the underlying Appraisal Proceeding, but the presiding Cayman Islands court will be highly receptive to evidence sought here and assistance from this Court.

3.      Section 1782 permits litigants in foreign proceedings to obtain discovery in the United States to assist in the foreign litigation. In particular, § 1782 states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

4.      The statutory requirements of § 1782 are satisfied here. As explained in the accompanying submissions, (1) the Respondent is "found" in this District because he resides within it, owns a business located within it, and votes in it; (2) the Requested Discovery is to be used in the Appraisal Proceeding, and (3) Petitioners are "interested person(s)" in that proceeding.

5.      This application also meets the discretionary factors of Section 1782, as explained further in the accompanying Memorandum of Law: (1) Respondent is not a party to the foreign proceedings, (2) Cayman courts will be receptive to judicial assistance from a U.S. court, (3) Petitioners are not attempting to circumvent foreign proof-gathering restrictions, and (4) the discovery sought is not intrusive or burdensome. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

6.    Petitioners therefore respectfully request that this Court expeditiously grant its application for an Order granting Petitioners leave to serve the Respondent with the subpoena attached as Exhibit 1 to the Loft Declaration.

WHEREFORE, Petitioners respectfully request that this Court enter an Order:

1.    Granting the application for discovery under 28 U.S.C. § 1782;

2.    Authorizing Petitioners to take discovery from Respondent, by issuing the Subpoena; and

3.    Directing Respondent to comply with the Subpoena in accordance with the Federal Rules of Civil Procedure and the Rules of this Court.

Dated: February 2, 2022
        District of Columbia

By: */s/ Amy Neuhardt*

Amy L. Neuhardt (D.C. Bar ID 996791)
William J. Harvey*
Boies Schiller Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
aneuhardt@bsfllp.com
wharvey@bsfllp.com

Duane L. Loft*
Brianna S. Hills*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2380
dloft@bsfllp.com
bhills@bsfllp.com

Christine Mackintosh*
GRANT & EISENHOFER P.A.

123 S. Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081
cmackintosh@gelaw.com

Ira A. Schochet*
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
ischochet@labaton.com

*Pro hac vice application forthcoming

Attorneys for Petitioners

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re Application of<br><br>FOURWORLD EVENT OPPORTUNITIES, LP<br>and GENESIS EMERGING MARKETS<br>INVESTMENT COMPANY,<br><br>Petitioners, for an Order Pursuant to 28 U.S.C.<br>§ 1782 to Conduct Discovery for Use in a Foreign<br>Proceeding. | Case No. 22- |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'**
**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO**
<u>**CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**</u>

OF COUNSEL:

Duane L. Loft*
Brianna S. Hills*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2380
dloft@bsfllp.com
bhills@bsfllp.com

Christine Mackintosh*
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081
cmackintosh@gelaw.com

Amy L. Neuhardt (D.C. Bar ID 996791)
William J. Harvey*
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
aneuhardt@bsfllp.com
wharvey@bsfllp.com

Ira A. Schochet*
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
ischochet@labaton.com

*Pro hac vice applications forthcoming

*Attorneys for Petitioners*

Dated: February 2, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................. 4

    A.    The Parties and the Discovery Sought................................................... 4

    B.    Circumstances Giving Rise to the Foreign Proceeding ......................... 5

          1.    Terms of the Merger Agreement................................................ 6

          2.    The Lead-Up to the Merger Was Designed to Unfairly Compensate Petitioners, and Respondent Mr. Dodds Was Central to That Process....... 8

          3.    The Merger Announcement Immediately Raised Red Flags for Petitioners and Public Watchdogs ........................................... 10

    C.    The Foreign Proceeding ....................................................................... 13

ARGUMENT ..................................................................................................................... 13

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782........... 14

    A.    Respondent Is Found in this District.................................................... 14

    B.    The Requested Discovery Is "For Use" In a Foreign Proceeding. ...... 16

    C.    Petitioners Are "Interested Persons."................................................... 17

II.    The *Intel* Discretionary Factors Weigh in Favor of Granting Petitioners' Application. ... 18

    A.    Respondent Is a Non-Participant in the Appraisal Proceeding........... 18

    B.    The Cayman Court Will Be Receptive to the Requested Discovery. .................. 18

    C.    Petitioners Do Not Seek to Circumvent Foreign Proof-Gathering Restrictions... 20

    D.    The Requested Discovery Is Not Unduly Burdensome. ...................... 22

          1.    The Requested Discovery Is Properly Limited in Scope. ......... 23

          2.    A Deposition Is Appropriate Here. ........................................... 25

III.    Expedited Compliance with the Requested Discovery Is Warranted. .............................. 26

CONCLUSION..................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
  785 F. Supp. 2d 434 (S.D.N.Y. 2011) ........................................................................... 20

*Amphenol Corp. v. Fractus, S.A.*,
  No. 19 Misc. 160 (PAE), 2019 WL 2521300 (S.D.N.Y. June 19, 2019) .............................. 25

*Att'y Gen. of Brit. Virgin Is. v. Hyman*,
  No. 1:19-mc-164-RCL, 2020 WL 2615519 (D.D.C. May 23, 2020) .................................... 21

*Azamar v. Stern*,
  662 F. Supp. 2d 166 (D.D.C. 2009) ............................................................................... 16

*Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*,
  35 A.3d 1127 (D.C. 2012) ............................................................................................ 15

*Erwin-Simpson v. AirAsia Berhad*,
  985 F.3d 883 (D.C. Cir. 2021) ...................................................................................... 16

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) .......................................................................................... 24

*Food Delivery Holding 12 S.a.r.l. v. DeWitty & Assocs. CHTD*,
  538 F. Supp. 3d 21 (D.D.C. 2021) ....................................................................... 17, 18, 21

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*,
  No. 21-mc-01019, ECF No. 56 (C.D. Cal. Jan. 6, 2022) .................................................... 26

*Gonzalez v. Internacional De Elevadores, S.A.*,
  891 A.2d 227 (D.C. 2006) ............................................................................................ 16

*Gushlak v. Gushlak*,
  486 F. App'x 215 (2d Cir. 2012) .................................................................................... 20

*Harris v. Omelon*,
  985 A.2d 1103 (D.C. 2009) .......................................................................................... 15

*HT S.R.L. v. Velasco*,
  125 F. Supp. 3d 211 (D.D.C. 2015) ................................................................................ 24

*In re Accent Delight Int'l Ltd.*,
  No. 16–MC–125, 2018 WL 2849724 (S.D.N.Y. June 11, 2018) .......................................... 26

*In re Application of Athos Asia Event Driven Master Fund*,
  No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) ................................................ 20

*In re Application of Athos Asia Event Driver Master Fund*,
   No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ........................... 20

*In re Application of Caratube Int'l Oil Co.*,
   730 F. Supp. 2d 101 (D.D.C. 2010) ...................................................................................... 19

*In re Application of Leret*,
   51 F. Supp. 3d 66 (D.D.C. 2014) ......................................................................................... 15

*In re Application of Masters*,
   315 F. Supp. 3d 269 (D.D.C. 2018) ...................................................................................... 17

*In re Barnwell Enters. Ltd.*,
   265 F. Supp. 3d 1 (D.D.C. 2017) .............................................................................. 1, 21, 24

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998) ............................................................................................ 2, 22

*In re de Leon*,
   No. 19-mc-0197 (TSC), 2020 WL 1047742 (D.D.C. Mar. 4, 2020) .............................. passim

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) .......................................................................................... 14, 15

*In re Ex Parte Application of Eni S.p.A.*,
   No. 20-mc-334-MN, 2021 WL 1063390 (D. Del. Mar. 19, 2021) ......................................... 21

*In re Ex Parte Application of Porsche Automobil Holding SE*,
   No. 15-MC-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ................................... 25

*In re Mother's Milk, Inc.*,
   No. 5:20–MC-00004–M, 2020 WL 2514315 (S.D.N.Y. May 15, 2020) ............................... 26

*In re Penner*,
   No. 17-cv-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ..................................... 20

*In re Petrobras Sec. Litig.*,
   393 F. Supp. 3d 376 (S.D.N.Y. 2019) .................................................................................. 15

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018) .................................................................................. 19

*In re Veiga*,
   746 F. Supp. 2d 8 (D.D.C. 2010) .................................................................................. passim

*In the Matter of Nord Anglia Education, Inc.*,
   FSD 235 OF 2017 ........................................................................................................... 3, 23

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ........................................................................................... passim

*Liverpool Ltd. P'ship v. Hatoyama*,
    No. 21-mc-80031-SVK, ECF No. 54 (N.D. Cal. Aug. 27, 2021) ........................................... 26

*Liverpool Ltd. P'ship v. Hatoyama*,
    No. 21-mc-80031-SVK, ECF No. 60 (N.D. Cal. Aug. 27, 2021) ........................................... 23

*Liverpool Ltd. P'ship v. Hatoyama*,
    No. 21-mc-80031-SVK, ECF No. 62 (N.D. Cal. Sept. 1, 2021) ........................................... 23

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ........................................................................................... 21

*Menashe v. Covington & Burling LLP*,
    No. 1:20-mc-46-ZMF, 2021 WL 3507637 (D.D.C. Aug. 3, 2021) ....................................... 22

*Mwani v. bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005) ........................................................................................... 16

*Pearson v. Univ. of Chicago*,
    No. 3:20-mc-00092-CSH, 2021 WL 194725 (D. Conn. Jan. 20, 2021) ............................... 25

*Qihoo 360 Technology Co., Ltd*
    (unreported, October 9, 2017 CICA) ............................................................................. 17

*Strike 3 Holdings, LLC v. Doe*,
    No. 20–cv–7923 (LJL), 2020 WL 5992346 (S.D.N.Y. Oct. 9, 2020) ................................... 24

*Thomas v. City of New York*,
    336 F.R.D. 1 (E.D.N.Y. 2020) ................................................................................. 24, 25

*Vasquez v. Whole Foods Mkt., Inc.*,
    302 F. Supp. 3d 36 (D.D.C. 2018) ................................................................................. 15

**Statutes**

28 U.S.C. § 1782 ........................................................................................... 1, 14, 19

## PRELIMINARY STATEMENT

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from an individual found in this District for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman Court**") on November 10, 2020 (the "**Appraisal Proceeding**").  In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their former shareholdings in 58.com ("**58.com**" or the "**Company**"), a Cayman Islands company that was delisted from the New York Stock Exchange, and taken private on September 17, 2020.  Petitioners' shares were forcibly canceled through a merger orchestrated by the Company's CEO and several private-equity funds (the "**Merger**").

The Merger was coercive and fundamentally unfair to minority shareholders, with respect to both the Merger price, which significantly undervalued 58.com's shares, and the process to approve the Merger.  The Merger capitalized on a temporary decline in 58.com's trading prices during the COVID-19 pandemic.  No effort was undertaken to shop the Company to competing bidders to ensure that 58.com shareholders received fair value for their shares.  And the Merger was orchestrated by majority shareholders—including the Company's founder and CEO—without the consent of a substantial amount of minority shareholders, who were offered inadequate consideration for their shares.

Through this Application, Petitioners seek narrowly tailored discovery from Respondent, who was a member of a two-person Special Committee of the Company's board of directors that approved the Merger transaction.  As a member of the Special Committee, Respondent played a critical role in negotiating and assessing the fairness of the terms of the Merger with 58.com and its board of directors.  Petitioners seek discovery from this individual concerning Respondent's role as a key decision-maker in the negotiation process leading up to the approval of the Merger

1

and the Merger price.  The discovery sought is directly relevant to determining fair value—the core issue in the Appraisal Proceeding—in which the Cayman Court will determine the fair value of the Petitioners' former holdings in the Company.

Section 1782 authorizes this Court to order discovery from any person that resides or is found in this district to assist with pending or contemplated proceedings before foreign tribunals. Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998); *see In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010) (pointing to "the statute's overarching interest in providing fair and efficient assistance and the liberal standards of discovery in granting the application and deferring to the foreign tribunal on contested issues").

As described below, Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Respondent "resides or is found" in this District; (ii) the requested information ("**Requested Discovery**") is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, dissenting shareholders in the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute.  *See* Section C below.

In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioners' Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, *Intel* says that when Respondent is a non-participant in the Foreign action, Section 1782 discovery is proper.  *Id.*  "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Id.*  The reasoning for this factor is that where a party is before a foreign tribunal, the tribunal "has jurisdiction . . .

2

and can itself order them to produce evidence." *Id.* Here, this factor weighs in favor of granting the Requested Discovery, as Respondent is not a party in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Cayman Court. Declaration of Marc Kish ("Kish Decl.") ¶ 39.

*Second*, *Intel* requires courts to consider whether the nature, attitude and procedures of the foreign tribunal indicate that it is receptive to Section 1782 assistance. *Intel*, 542 U.S. at 264. Here, there is no indication, let alone any of the "authoritative proof," required by the second *Intel* factor, that the Cayman Court would be unreceptive to Section 1782 assistance. *Id.*; *Veiga*, 746 F. Supp. 2d at 23–24 ("The party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought.") (citations omitted). To the contrary, as established in the accompanying expert declaration of Justice Ingrid Mangatal (Ret'd), Petitioners will have the right to present evidence gathered under Section 1782 to the Cayman Court in support of its claims. Declaration of Justice Mangatal ("Mangatal Decl.") ¶ 69. Indeed, as made clear in a recent Cayman Islands appraisal decision, *In the Matter of Nord Anglia Education, Inc.*, FSD 235 OF 2017,[1] the Cayman Court will accept and consider the evidence sought here given its critical importance in determining the fair value of the shares. A court in this District has previously granted a Section 1782 application seeking discovery for proceedings in connection with valuations of investments of an estate, accepting that Cayman courts would "receive, accept, and consider the documents and information obtained" in this proceeding." *See In re de Leon*, No. 19-mc-0197 (TSC), 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020) (Chutkan, J.). Therefore, the second factor weighs in favor of granting discovery.

*Third, Intel* looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."

---

[1] A copy of the decision is attached as Exhibit 9 to the expert declaration of Justice Mangatal.

*Intel*, 542 U.S. at 265.  Here, the Requested Discovery does not implicate any privilege or special protection that would make it improper under Cayman law.  Therefore, the third factor weighs in favor of granting discovery.

*Fourth*, *Intel* requires that the proposed discovery not be unduly burdensome.  *Id.*  Here, the Requested Discovery is narrowly tailored to seek information directly relevant to the critical issues in the Appraisal Proceeding—evidence addressing the fair value of the Petitioners' former shareholdings in 58.com and the process that 58.com undertook to negotiate and approve the Merger.  Therefore, the fourth factor weighs in favor of granting the Application.

*Finally*, the Court should exercise its discretion to order production of any responsive discovery that Respondent has in his possession, custody, or control, regardless of the physical location of that evidence.  Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third-party not subject to the jurisdiction of the foreign court.

## BACKGROUND

### A.    The Parties and the Discovery Sought

Petitioners here—the dissenting shareholders in the Appraisal Proceeding—are funds that invested in 58.com and owned 58.com shares immediately before the effective date of the Merger. *See* Kish Decl. ¶¶ 2, 11–13.

Respondent is Mr. Robert Dodds, who, as described above, served as one of two members of the Special Committee that approved the Merger.  According to the Proxy Statement, Respondent "is the founder and managing director of DRP Capital Limited ("**DRP Capital**"), an investment banking firm that provides cross-border mergers and acquisitions advisory services." Declaration of Duane Loft ("Loft Decl."), Ex. 3 at E-2.  Respondent is a graduate of Georgetown

Law School.[2]  Database searches by a private investigator state that: (1) Respondent, an individual appearing to be Respondent's partner or spouse, and an individual appearing to be Respondent's son are all listed as residents at a residential home in Washington, D.C.; (2) Respondent pays utilities at that address; (3) Respondent has an active voter registration using that address; (4) Respondent has a phone number with that address listed as the billing address; and (5) DRP Capital, an investment fund owned and operated by Respondent, is connected with the same residential address.  Declaration of Tyler Burtis ("Burtis Decl.") ¶¶ 2, 4, Ex. 1.

Petitioners seek limited discovery from the Respondent, targeted squarely at issues central to the Appraisal Proceeding.  As discussed above, as one of only two members of the Special Committee, Respondent was directly involved in and responsible for the Company's decision to approve the Merger, and played a hands-on role in the decision-making and negotiating process that the deal required, including decisions regarding the ultimate Merger price.

Petitioners' Application thus seeks deposition testimony and document discovery from Respondent, regarding: (i) the fairness of and the process engaged in to reach the Merger price; (ii) 58.com's valuation, including concerning any forecasts of the Company's future performance; and (iii) information pertaining to any alternative bids to acquire the Company.  The Requested Discovery will significantly assist the Cayman Court in evaluating the Merger and determining the fair value of Petitioners' former shareholdings in 58.com.  *See* Kish Decl. ¶¶ 36–40; Mangatal Decl. ¶ 69.

### B.    Circumstances Giving Rise to the Foreign Proceeding

Before the Merger, 58.com—China's largest online classifieds business—was a publicly

---

[2] *See 58.com Announces Changes to Board and New Chief Strategic Officer*, apnews.com (Apr. 13, 2020), https://apnews.com/press-release/pr-newswire/business-china-beijing-board-of-directors-corporate-governance-1cef306c25976ce57f57d1bf46dd8f1d.

traded corporation incorporated in the Cayman Islands.  Kish Decl. ¶ 14.  The Company's American Depository Shares ("**ADS**") were traded on the New York Stock Exchange.  *Id.* ¶ 15. Jinbo Yao, the Company's CEO and founder, historically maintained significant control over the voting shares of 58.com.  *Id.* ¶ 16.

In June 2020, as a result of the COVID-19 global pandemic, the Company's online classified services suffered a temporary decline in demand.  The share price of 58.com also suffered a temporary decline.  *Id.* ¶ 33.  The fact that Mr. Yao—the Company's longtime controlling shareholder, founder, Chairman, and CEO—helped orchestrate the Merger at this depressed price indicates the Merger was essentially a management buyout of 58.com and further shows the Company was taken private to enrich those in control of the Company at the expense of minority shareholders.  Despite Mr. Yao's fiduciary obligation to steward the Company for the benefit of all shareholders, he teamed up with private equity funds to buy the Company for his own benefit while its trading price was depressed during the pandemic.  *Id.* ¶¶ 20–21, 33.

On June 15, 2020, the Company announced that it had entered into a merger agreement through which Mr. Yao and a consortium of private equity funds (the **"Buyer Group"**) would acquire 58.com.  *Id.* ¶¶ 19–20.  In addition to Mr. Yao, the Buyer Group also included: (1) funds wholly owned and controlled by Warburg Pincus LLC, a New York-based private equity firm, and its wholly owned affiliate, Warburg Pincus Asia; (2) General Atlantic LLC, another New York-based private equity firm, and (3) Ocean Link Partners L.P., a China-based private equity firm. Through and including Mr. Yao, the Buyer Group collectively controlled over 44% of the Company's voting shares.  *Id.* ¶ 20.

1.    Terms of the Merger Agreement

The announcement stated that on the effective date of the Merger, 58.com's publicly traded

ADS would be canceled in exchange for the right to receive $56 per ADS.[3]  *Id.* ¶ 21.  Under the terms of the Merger, 58.com was to become a wholly-owned subsidiary of a company called Quantum Bloom Group Ltd., which would be beneficially owned by the Buyer Group, including Mr. Yao, Warburg Pincus (and Warburg Pincus Asia), General Atlantic, Ocean Link, and others. *Id.* ¶¶ 20–21.  Notably, other principal shareholders of the Company, including Tencent Holdings Ltd. (the **"Rollover Shareholders"**), controlled over 28.26% of the voting shares of 58.com.  *Id.* ¶ 17.  It was explicitly agreed under the terms of the Merger that shares held by the Rollover Shareholders would <u>not</u> be cancelled in exchange for the Merger price.  *Id.* ¶ 23.  Rather, shares held by the Rollover shareholders would be converted into shares of the new private 58.com entity (and their pro rata equity interest increased from 22.44% to 33.25%, bestowing the Rollover Shareholders with a significant financial benefit).  *Id.*

Under the terms of the Merger Agreement, in the event the Company received an unsolicited alternative bid of greater value (a "**Superior Proposal**"), the Buyer Group had unlimited match rights.  *Id.* ¶ 35.  To be able to accept a Superior Proposal, the Company and the board had to, among other things, provide the Buyer Group with an opportunity to match or exceed the competing bid and pay a termination fee of $126,400,000.  *Id.*  Under those circumstances, any potential bidder would understand that the Buyer Group—which included senior 58.com management with exclusive inside knowledge of the Company—would likely match each of its bids up to the fair value of the Company, causing such a bidder to risk, if it won, overpaying for the 58.com shares.  These onerous requirements essentially guaranteed the Merger would be unchallenged by any competing bid, and severely deterred any potential bidders from making a

---

[3] American Depository Shares, or "ADS," are equity shares of a foreign company held by a U.S. depositary bank available for purchase by U.S. investors.

bid in the first place.

2.    The Lead-Up to the Merger Was Designed to Unfairly Compensate Petitioners, and Respondent Mr. Dodds Was Central to That Process.

The lead-up to the Merger announcement was characterized by a markedly flawed process designed to engineer the management buyout desired by Mr. Yao and his private equity partners. On March 24, 2020, the Company engaged Kaihui Limited (**"KL"**) as its consultant to explore strategic transactions.  Kish Decl. ¶ 24.  On April 2, 2020, KL contacted Ocean Link; incredibly, that very evening, Ocean Link submitted a proposal to acquire all the outstanding shares of the Company at $55 per ADS.  *Id.*

The Company then decided to create a Special Committee of independent members of the board of directors, which would be tasked with considering the Merger.  However, there were no independent board members at the time, following the resignation of Frank Lin, an independent director who had served on the Company's board for over ten years.  *Id.*  The Company consequently appointed two new, purportedly independent, members of the board: Respondent, Mr. Dodds, and Li (Lily) Dong, who together then comprised the entire Special Committee to examine the Merger.  *Id.*  Despite deeming Respondent and Ms. Dong to be independent directors, the Company never disclosed that Respondent and Ms. Dong had preexisting relationships to members of the Buyer Group.  On information and belief, from 2015–2017, Ms. Dong was the chief financial officer of eDaijia, an online designated driver service provider that both 58.com and Warburg Pincus invested in, and two Warburg Pincus partners were directors of RDA Microelectronics while Ms. Dong was its CFO from 2007–2015.  On information and belief, Mr. Dodds worked at China International Capital Corporation during the same six-year period as Eric

Zhang, the current head of General Atlantic's China operations.[4]  These connections, and the Company's failure to disclose them, call into question Mr. Dodds' and Ms. Dong's independence from the Buyer Group.

As a member of the Special Committee, Respondent had significant authority in the decision making process leading up to the Merger.  *See* August 7, 2020 Proxy Statement of 58.com Inc. relating to the Merger, Loft Decl., Ex. 3 at 27.  Specifically, the Special Committee had the power to "direct the process" regarding "the review and evaluation" of the proposed Merger, respond on the Board's behalf to communications regarding all proposals, negotiate "the terms and conditions of the Proposed Transaction" and "approve or reject" the Merger.  *Id.*

Among other things, Respondent, as a member of the Special Committee, approved the engagement of Houlihan Lokey (China) Limited ("**Houlihan Limited**") as the Company's financial advisor.  At the request of the Special Committee, the Company began preparing updated financial projections "for use by [Houlihan Limited] in connection with its financial analysis."  *Id.* at 29.  These projections were created under the watch of the Company management who had an obvious incentive to underestimate the Company's financial prospects.  As a result, Houlihan Limited's valuation presentation reflected that the Company management's profit projections were lower than projections of all nine Wall Street analysts that followed the Company closely.[5]

On May 21, 2020, at the direction of Respondent and Ms. Dong, the Company's purportedly independent directors, the Special Committee declined to either conduct a "market check"—that is, contacting potential bidders for control of 58.com—or to insist on negotiations with the Buyer Group for the right to conduct a "go-shop," a procedure by which 58.com would

---

[4] On information and belief, it is clear that Mr. Dodds and Mr. Zhang knew each other while at China International Capital Corporation, as they are connected via Facebook.

[5] June 12, 2020 Houlihan Limited Presentation, Loft Decl., Ex. 7 at 23.

be permitted to solicit competing bids.  Kish Decl. ¶ 25.  The Buyer Group's bid was thus never tested in the market, and Petitioners here lost all benefit of a competitive process to determine the actual market value of their shares.

This is not the only feature of Respondent's oversight of the Merger as a member of the Special Committee that gives rise to significant concern.  The Special Committee treated KL as its advisor and agent throughout its negotiations with the Buyer Group, even though KL was hired by the same members of the Company's management that would later propose the transaction as part of the Buyer Group.  Loft Decl., Ex. 3 at 33–34.  Ultimately, the Special Committee and the Buyer Group agreed to a purchase price of $56 per ADS, but only after removing a critical protection that would have required approval by a majority of the minority shareholders (the "**MoM Condition**") to protect minority shareholder rights, making the approval of the transaction almost certain regardless of support from the minority shareholders.  Kish Decl. ¶ 26.  On June 13, 2020, Respondent Mr. Dodds participated in a call with representatives of the Buyer Group during which "removal of the Dissenters' Rights Condition and inclusion of the Approval by a Majority of the Unaffiliated Condition" were negotiated.  Loft Decl., Ex. 3 at 34.  All told, the negotiation process took only 74 days, and the price negotiation only lasted 10 days, a staggeringly rushed timeline designed to undervalue the Company and squeeze out minority shareholders.  Kish Decl. ¶ 26.

3.    The Merger Announcement Immediately Raised Red Flags for Petitioners and Public Watchdogs

The Merger announcement led to immediate concern expressed by minority shareholders and independent industry commentators.  In June 2020, minority shareholder Aberdeen Standard Investments Ltd. wrote a letter to the SEC urging the agency to bar interested parties from voting

on the proposal.[6]  On August 26, 2020, Institutional Shareholder Services ("ISS"), a well-respected proxy-advisory firm that advises institutional investors on shareholder voting and corporate governance matters, published a report opposing the transaction, stating "[t]he process that led to the buyer group's offer was flawed and the result of that process is questionable."  ISS also performed its own financial analysis that showed "[t]he value offered to shareholders is out of sync with the company's historical valuation relative to peers."[7]

On September 7, 2020, the Company held an extraordinary general meeting of shareholders (the "**EGM**"), at which time 58.com shareholders voted on whether to approve the Merger.  Kish Decl. ¶ 27.  Only 15% of shareholders that were unaffiliated with either the Buyer Group or the Rollover Shareholders voted in favor of the transaction.  *Id.*  Despite such widespread opposition from the unaffiliated shareholders,[8] the transaction was forced through, given the lack of MoM protections: 61% of the Class A and Class B shareholders attended the EGM (which represented approximately 65% of the total outstanding votes), and the Merger was approved by over 75% of the total votes cast, with the Rollover Shareholders themselves surprisingly opting to abstain.  *Id.* ¶¶ 27–28.  Accordingly, Petitioners' shares and the shares of all remaining 58.com stockholders— other than members of the Buyer Group and the Rollover Shareholders—were canceled in exchange for the Merger consideration effective September 17, 2020, at a price that Petitioners allege is substantially below their fair value.  *Id.* ¶¶ 28–29.

As a result of the above, as alleged in the Appraisal Proceeding, the Merger price significantly undervalued 58.com shares and was coercive and unfair to 58.com's minority

---

[6] *See* Loft Decl., Ex. 5.

[7] *See* Loft Decl., Ex. 6.

[8] Notices of objection were delivered by shareholders of at least 70,524,198 shares.

shareholders:

- The Merger was timed to capitalize on a temporary depression in 58.com's trading prices that coincided with the pandemic, resulting in a buyout price of $56 per ADS—dramatically below 58.com's pre-pandemic trading prices.[9]

- The Merger did not contain a MoM condition to protect 58.com's minority shareholders. Respondent Dodds, as one of only two members of the Special Committee, agreed to waive this critical protection in exchange for a mere $1 increase per ADS of the proposed purchase price. Without MoM protection, the deal was a foregone conclusion because the Buyer Group collectively controlled the majority of the Company's voting shares. Kish Decl. ¶¶ 26, 28, 34(a)

- The Special Committee—including Respondent Dodds—made no effort to conduct a proper competitive sale process and thus allowed the Buyer Group and Rollover Shareholders to cash out the Dissenting Shareholders at a depressed price. *Id.* ¶ 34(b).

- The Special Committee did not solicit a single additional bid, did not conduct a "market check," and did not insist on a "go-shop" provision—all standard features of a legitimate sale process intended to protect minority shareholders.[10] *Id.* ¶ 25.

- The Merger was structured such that only those shares *not* held by the Buyer Group and the Rollover Shareholders were cashed out, allowing each to maintain their stake in the Company. *Id.* ¶ 34(c).

- The Rollover Shareholders increased their pro rata equity from 22.44% to 33.25% by not cashing out, giving them incentive to approve the Merger at the expense of minority shareholders. *Id.* ¶ 23.

- The Buyer Group and Rollover Shareholders together had the ability to push the Merger through with over 75% of the voting shares cast. *Id.* ¶ 27.

- The Merger was essentially a management buyout of 58.com: Mr. Yao—the Company's longtime controlling shareholder, founder, Chairman, and CEO—helped orchestrate the Merger at a depressed price. The Merger Agreement contained onerous requirements regarding the handling of Superior Proposals, essentially guaranteeing that the Merger would be unchallenged by any competing bid, and acting as a deterrent to potential bidders. *Id.* ¶ 34(d).

---

[9] On January 16, 2020—immediately before the market-wide decline associated with coronavirus—58.com's NYSE-listed ADS closed in excess of $69 per share. Kish Decl. ¶ 33.

[10] *See* Loft Decl., Ex. 3 at 30.

C.      **The Foreign Proceeding**

The Cayman Petition, filed November 10, 2020 seeks the Cayman Court's "determination of the fair value of the shares" held by the dissenting shareholders.  Kish Decl., Ex. A at 1.  Under Section 238 of the Cayman Islands Companies Act, the Cayman Court in the Appraisal Proceeding has a statutory obligation to determine the fair value of the dissenting shareholders' former shareholdings in the Company.  As described in the accompanying declaration of Justice Mangatal, the parties to the Appraisal Proceeding—including the Petitioners and 58.com—will submit evidence, expert testimony, and legal briefs to the Cayman Court, which will weigh the evidence and determine the fair value of Petitioners' shares.  *See* Mangatal Decl. ¶¶ 23–29, 52–69.

In assessing fair value in a Cayman Islands Appraisal Proceeding, the Cayman Court will examine the fairness (or lack thereof) of the process that led 58.com's board to approve the Merger.  *Id.* ¶ 30.  In doing so, the Cayman Court will consider, among other things, the process by which the 58.com board and/or Special Committee negotiated and approved the Merger price, and the valuations relied upon by the 58.com Special Committee and the Buyer Group.  *Id.* ¶ 59.

There is no automatic right to discovery in Section 238 proceedings similar to pre-trial discovery in the U.S.  Only upon Court order is a party to the proceeding required to provide discovery of "documents which are in their possession, custody or power relating to any matter in question between them in the action."  *Id.* ¶ 31 (citing Grand Court Rules Order 24 rule 3).  Respondent is not party to the Appraisal Proceeding.  Discovery from non-parties, particularly those outside the Cayman Court's jurisdiction like Respondent, is very limited, subject to cumbersome procedures, and rarely used.  *Id.* ¶¶ 42–51.

**ARGUMENT**

Section 1782 of Title 28 of the United States Code permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding.  *Intel*, 542 U.S. at 243.

13

A Section 1782 application must satisfy three "conditions": (1) the discovery is sought from someone who resides or is found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *Veiga*, 746 F. Supp. 2d at 17. If the statutory requirements are met, the court considers four discretionary "*Intel*" factors: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. Ultimately courts consider "the statute's twin aims" of "provid[ing] fair and efficient assistance to participants in international litigation and to encourage other countries to provide similar assistance." *Veiga*, 746 F. Supp. 2d at 17.

## I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.

### A.    Respondent Is Found in this District.

Respondent's address is 3403 P Street Northwest, Washington, DC 20007-2706. *See* Burtis Decl. ¶¶ 2, 4, Ex. 1. This address, along with Respondent's continuous and systematic connections with this District, satisfy Section 1782's statutory requisite that a respondent "reside[s] in or is found" in this District.

The D.C. Circuit has not yet determined whether the "resides or is found" language in Section 1782 requires the court to have personal jurisdiction over the party from whom movant seeks discovery. *de Leon*, 2020 WL 1047742, at *2. Other jurisdictions, however, have held that Section 1782's statutory prerequisite is coextensive with personal jurisdiction. *See id.* (quoting *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019)); *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d

14

376, 381 (S.D.N.Y. 2019) ("[D]istrict courts should read the 'resides or is found' language in § 1782 to incorporate a personal jurisdiction requirement.").  *See also Valle Ruiz*, 939 F.3d at 527–28 (2d Cir. 2019) (holding that "resides or is found" in Section 1782 "extends to the limits of personal jurisdiction consistent with due process," not merely general personal jurisdiction); *In re Application of Leret*, 51 F. Supp. 3d 66, 70 (D.D.C. 2014) ("found in" element satisfied when "[Respondent] resides in the district of Columbia").

"General jurisdiction exists where a defendant's contacts with the forum state are sufficiently 'continuous and systematic,' such that the defendant is 'essentially at home' in the forum." *Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 45 (D.D.C. 2018).  This Court has general personal jurisdiction over Respondent.  When assessing an individual's contacts with the forum, "the most critical inquiry is . . . whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum and are not fortuitous or accidental." *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1130 (D.C. 2012) (quoting *Harris v. Omelon*, 985 A.2d 1103, 1105 (D.C. 2009)).

Respondent is listed as a resident of a residential home in this District, at 3403 P Street Northwest, Washington, DC 20007-2706, according to multiple databases.  Burtis Decl. ¶¶ 2, 4(a), Ex. 1.  Individuals that appear to be Respondent's partner or spouse and son are also listed as residents at the address.  *Id.*  Respondent pays utilities at the same address, at least as recently as August 2021.  *Id.* ¶ 4(b).  Moreover, Respondent has an active Washington, D.C. voter registration using the same address, and an active Washington, D.C. phone number with the address identified as the billing address.  *Id.* ¶ 4(c), 4(d).  Records list the same address again for Respondent's investment fund, DRP Capital.  *Id.* ¶ 4(e).  These continuous and systematic contacts sufficient to

15

permit this Court to exercise general jurisdiction over Respondent under due process, thus satisfying Section 1782's "found in" requirement. *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 890 (D.C. Cir. 2021) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)) (general personal jurisdiction exists where a defendant's "contacts are 'so continuous and systematic as to render [it] essentially at home' in the District"); *Azamar v. Stern*, 662 F. Supp. 2d 166, 174 (D.D.C. 2009) (court can exercise general jurisdiction if defendant maintains "continuous and systematic business contacts with the forum" jurisdiction) (citations omitted); *Gonzalez v. Internacional De Elevadores, S.A.*, 891 A.2d 227, 233 (D.C. 2006) ("[T]he defendant corporation must purposely avail itself of the privilege of conducting activities within the forum state, and its continuing contacts with the District of Columbia must provide it with clear notice that it is subject to suit here."); *see also de Leon*, 2020 WL 1047742, at *2 ("fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum") (quoting *Mwani v. bin Laden*, 417 F.3d 1, 12 (D.C. Cir. 2005)). The fact that Respondent is listed as a resident at an address within this District, at which he pays utilities, has a phone number billing address, and is registered to vote, and with which records also associate his business, is sufficient to satisfy this test, and further provide him with the required "fair warning" that he could be subject to suit in this District. *See* Burtis Decl. ¶¶ 2, 4.

**B.     The Requested Discovery Is "For Use" In a Foreign Proceeding.**

A Section 1782 application establishes the "for use" requirement by showing that the requested discovery may be submitted to and "will be received" by the foreign tribunal. *See de Leon*, 2020 WL 1047742, at *2. To satisfy this element, "the burden imposed on the applicant is *de minimis*." *Veiga*, 746 F. Supp. 2d at 18. A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *Id.* at 17–18. Instead, "it is sufficient 'use' if the applicant will present the evidence

16

sought to the foreign tribunal with a request that it be considered; the statute does not require the actual receipt of materials into evidence." *Id.* at 18 (citation omitted).

Cayman courts, including the court hearing the Appraisal Proceeding, will accept and consider any relevant evidence submitted by the parties, so long as lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an exclusionary rule of evidence. *See* Mangatal Decl. ¶¶ 52–54, 69. In appraisal proceedings, Cayman courts have emphasized the need to consider all facts and matters which may have a bearing on the determination of fair value. *Id.* ¶ 37 (citing *Qihoo 360 Technology Co., Ltd* (unreported, October 9, 2017 CICA) ("The sole task of the Court is to determine the fair value of the dissenters' shares. To do that, it needs full information.")). The Cayman Court here therefore will accept and consider the Requested Discovery here, given its relevance in determining the fair value of the Petitioners' 58.com former shareholdings. *Id.* ¶ 69.

The Requested Discovery is therefore plainly "for use" in the Appraisal Proceeding, and Petitioners have thus satisfied the second statutory requirement. *See de Leon*, 2020 WL 1047742, at *2 (finding discovery sought for use in Cayman proceeding satisfied this prong).

### C.     Petitioners Are "Interested Persons."

Finally, "[l]itigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256.[11] Petitioners are respondents in the Appraisal Proceeding, Kish Decl. ¶ 2, and thus are interested persons.

---

[11] *See also Food Delivery Holding 12 S.a.r.l. v. DeWitty & Assocs. CHTD*, 538 F. Supp. 3d 21, 27 (D.D.C. 2021) ("interested person" factor is "easily met" where applicant is a party to an arbitration); *Veiga*, 746 F. Supp. 2d at 19 ("Applicants are all 'interested persons' within the meaning of § 1782(a) as litigants in the proceedings at issue."); *In re Application of Masters*, 315 F. Supp. 3d 269, 274 (D.D.C. 2018) ("it is clear that the applicant, as a party to the Nigerian proceeding, qualifies as an 'interested person' within the meaning of § 1782").

## II.      THE *INTEL* DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING PETITIONERS' APPLICATION.

### A.      Respondent Is a Non-Participant in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.

Respondent Dodds is not a party in the Appraisal Proceeding, and thus will not be subject to party discovery in the Appraisal Proceeding.  Kish Decl. ¶ 39; Mangatal Decl. ¶¶ 42–43.  Further, because Respondent resides in the U.S., the Cayman Court will not have jurisdiction to compel discovery from him.  Mangatal Decl. ¶¶ 45, 47.  Petitioners, thus, will not be able to take discovery of Respondent through the Appraisal Proceeding, even though evidence from Respondent is crucial to the fair resolution of the dispute.  Accordingly, this first *Intel* factor weighs in favor of granting the Application. *See, e.g.*, *Food Delivery Holding 12 S.a.r.l.*, 538 F. Supp. 3d at 29 (finding that the first *Intel* factor weighed in favor of granting a Section 1782 application where nonparticipants in the foreign proceeding were the targets of the requested discovery and "may be outside the foreign tribunal's jurisdictional reach").  *See also Veiga*, 746 F. Supp. 2d at 17 (finding that the first factor weighed in favor of granting a 1782 application even considering that its target "may hypothetically be subject to the jurisdiction" of the foreign court).

### B.      The Cayman Court Will Be Receptive to the Requested Discovery.

The second *Intel* factor requires courts to consider whether the nature, attitude and procedures of the foreign tribunal indicate that it is receptive to Section 1782 assistance.  *Veiga*, 746 F. Supp. 2d at 23–24.  There is a strong presumption that foreign tribunals will be receptive to

evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through § 1782.  *See In re Application of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 105 (D.D.C. 2010) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782") (internal citations omitted); *Veiga*, 746 F. Supp. 2d at 23–24.  ("The party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought.").

As explained by Judge Mangatal, Cayman Islands courts will consider any evidence that has a bearing on determining the fair value of a company's shares.  *See* Mangatal Decl. ¶¶ 30, 37, 52-53.  Cayman Islands courts have specifically held that a Section 1782 application can be used to obtain discovery for use in Cayman Islands proceedings.  *See id.* ¶ 54.  Indeed, the Cayman Court of Appeal expressly has held that the right to obtain full discovery, including pre-trial deposition testimony, "is a right conferred by U.S. law—it is not a right conferred by, or *to be withheld under Cayman law*."  *Id.* ¶ 55 & Ex. 7 (emphasis added).  Further, multiple U.S. courts, including one in this district, have recognized that Cayman Islands courts are receptive to evidence obtained through Section 1782.  *See de Leon*, 2020 WL 1047742, at *3 ("Here, the Grand Court of the Cayman Islands will receive, accept, and consider the documents and information obtained in this proceeding."); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence

may not be discoverable under Cayman law.").[12]

Cayman Islands courts remain receptive to evidence obtained through other judicial measures such as 28 U.S.C. § 1782. Indeed, as explained by Judge Mangatal, "Cayman Islands courts have had the opportunity to consider specifically the use of discovery obtained through Section 1782 in connection with Cayman Islands proceedings and have held that it is permissible for a litigant in a Cayman Islands proceeding to exercise any rights it may have under Section 1782 to obtain relevant evidence, including deposition testimony, for use in those proceedings." Mangatal Decl. ¶ 54. All relevant evidence obtained through this Application will thus be admissible in the Cayman Court. *Id.* ¶ 69. Furthermore, Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. *Id.* ¶ 66. There is no requirement to obtain permission from a Cayman Islands court before seeking relevant evidence abroad in the U.S. under 28 U.S.C. § 1782. *Id.*

### C.    Petitioners Do Not Seek to Circumvent Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

---

[12] *See also Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) (affirming use of Section 1782 applications in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman proceedings); *In re Penner*, No. 17-cv-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding Cayman Court "is open to receiving § 1782 discovery"). Indeed, two district courts recently granted 1782 petitioners' applications for both document discovery and depositions for use in an appraisal proceeding in the Cayman Islands. *See In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) (granting 1782 petition for discovery for use in Cayman appraisal proceeding).

States." *Intel*, 542 U.S. at 265.  In *Intel*, the Supreme Court expressly rejected the notion that

Section 1782 requires that the evidence be discoverable in the foreign proceeding itself.  *Id.* at 261

("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal

practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United

States federal courts.").[13]  This factor applies only in the extreme circumstances where a § 1782

application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that

*prohibit* the acquisition or use of certain materials," *Att'y Gen. of Brit. Virgin Is. v. Hyman*, No.

1:19-mc-164-RCL, 2020 WL 2615519, at *8 (D.D.C. May 23, 2020) (quoting *Mees v. Buiter*, 793

F.3d 291, 303 n.20 (2d Cir. 2015)), *vacated on other grounds*, 2021 WL 706504 (D.D.C. Feb. 23,

2021), or "when the foreign tribunal has already rejected requests for the same documents," *In re*

*Ex Parte Application of Eni S.p.A.*, No. 20-mc-334-MN, 2021 WL 1063390, at *4 (D. Del. Mar.

19, 2021).  No such circumstance is present here.  Moreover, "there is no requirement in the statute

that a petitioner exhaust their discovery options in a foreign forum before seeking discovery here."

*In re Barnwell Enters.*, 265 F. Supp. 3d at 13; *see also id.* ("[S]ection 1782 does not require that

the material sought be discoverable or even admissible in the foreign proceedings."); *Veiga*, 746

F. Supp. 2d at 24 ("Section 1782(a) does not incorporate an exhaustion requirement, and an

applicant is not required to first seek discovery from the foreign tribunal").  Instead, the third *Intel*

factor is satisfied unless the foreign court actively prohibits the petitioner gathering the information

sought.  *See In re Barnwell Enters.*, 265 F. Supp. 3d at 12 ("Absent clear and authoritative proof

from a source other than [respondent's] lawyers that the foreign tribunals at issue here would refuse

the evidence Petitioners seek, the Court is unwilling to reject Petitioners' application for this

---

[13] *See also In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 12-13 (D.D.C. 2017) ("With respect to Respondent's first contention, as the Court has already explained, section 1782 does not require that the material sought be discoverable or even admissible in the foreign proceedings.").

reason.").

The discovery sought does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, "Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case" and "[t]hus, there is no requirement to obtain permission from a Cayman court before seeking relevant evidence abroad." Mangatal Decl. ¶ 66. The Cayman Islands Court of Appeal has expressly held that "*prima facie*, a party who could invoke a legitimate right under foreign law," such as the jurisdiction of the US District Court under § 1782, "would be entitled to do so." *Id.* ¶ 57.

### D.    The Requested Discovery Is Not Unduly Burdensome.

The discovery sought by Petitioners is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. *See Menashe v. Covington & Burling LLP*, No. 1:20-mc-46-ZMF, 2021 WL 3507637, at *3 (D.D.C. Aug. 3, 2021) ("[The fourth *Intel* factor] requires an evaluation of the scope of the requested discovery, asking whether it is unduly intrusive or burdensome. In addition to the burden on the party from whom discovery is sought, courts have interpreted that consideration to contemplate the relevance of the requested discovery to the foreign proceeding.") (internal citations omitted). The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *See Veiga*, 746 F. Supp. 2d at 19. ("Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)."); *see also In re Bayer AG*, 146 F.3d at 195 ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute."). The *Hatoyama* case is relevant here as an example of a recent instance in which a court ordered Section 1782 production from an individual. Notably, in *Hatoyama*, the scope of production was confined to documents in Mr. Hatoyama's personal email and on his personal laptop. *Liverpool*

22

*Ltd. P'ship v. Hatoyama*, No. 21-mc-80031-SVK, ECF No. 62 at 1–2 (N.D. Cal. Sept. 1, 2021).

Mr. Hatoyama represented that he no longer had access to company email, and that he was unaware

of any legal right he had to require the company to give him documents. *Liverpool Ltd. P'ship v.*

*Hatoyama*, No. 21-mc-80031-SVK, ECF No. 60 at 1–3 (N.D. Cal. Aug. 27, 2021). Similar to the

requested discovery in *Hatoyama*, and as discussed below, the Requested Discovery proposed here

is narrowly tailored to target information that is highly relevant to the foreign Appraisal

Proceeding.

     1.  <u>The Requested Discovery Is Properly Limited in Scope.</u>

  *First*, although Petitioners could seek all discovery authorized under Federal Rule of Civil

Procedure 45, the Requested Discovery is instead narrowly tailored and seeks the production of

information directly relevant to critical issues in the Appraisal Proceeding—(a) the process by

which the Special Committee approved the Merger, (b) the independence of the Special

Committee, and (c) the Special Committee's negotiation and approval of the price per ADS in the

transaction. *See* Loft Decl., Ex. 1. In a recent appraisal decision, the Cayman Court expressly

referred to the 2,900 documents produced in a Section 1782 proceeding by Houlihan Lokey, an

entity that acted as an advisor to the Special Committee that approved the transaction as issue.

Mangatal Decl. ¶ 58 (citing *In the Matter of Nord Anglia Education, Inc.*, FSD 235 OF 2017 at

¶ 49). The court found that discovery was "obviously relevant to advancing a reasoned critique of

[the relevant actor's] DCF analysis." *Id.* Given the role of the Respondent here as a member of

the Special Committee, there can be no serious dispute as to the relevance of the discovery sought

to the Appraisal Proceeding.

  *Second*, the Requested Discovery is temporally limited to the period during which the

58.com board reported in public filings it was negotiating the transaction with the Buyer Group.[14]

*Third*, Petitioners are willing to meet and confer with Respondent to address any scope of burden concerns. If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondent from bringing a motion to quash or modify the discovery sought.[15] If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

*Fourth*, the requested deposition testimony is not duplicative of any discovery in the Appraisal Proceeding. The Cayman Court has issued a "Directions Order" that outlines the scope of its discovery process, and requires the Company to produce several categories of communications sent between or received by the members of the Special Committee but makes no mention of deposing its members. *See* Mangatal Decl., Ex. 1 ¶ 8. However, even if some portion of the document discovery requested through this Application is duplicative of the document discovery in the Appraisal Proceeding, that is no bar to discovery under Section 1782. A court will deny a duplicative discovery request only if the overlap with other productions is "unreasonable." *Thomas v. City of New York*, 336 F.R.D. 1, 2-3 (E.D.N.Y. 2020); *see HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 225 (D.D.C. 2015) ("If the material sought is discoverable in the

---

[14] *See In re Barnwell Enters*, 265 F. Supp. 3d at 13-14 (holding that "so long as Petitioners' discovery requests are generally limited in time to seek production of documents" from a relevant time period, and "so long as Petitioners' discovery requests are limited in scope to seek the production of communications and documents related to the four identified employees" in possession of the relevant documents, "the Court is satisfied that those requests are not unduly intrusive or burdensome").

[15] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 20–cv–7923 (LJL), 2020 WL 5992346, at *2 (S.D.N.Y. Oct. 9, 2020).

foreign tribunal, litigants are not required to seek discovery through the foreign tribunal prior to requesting through the United States, but courts have the discretion to consider this factor."), *vacated on other grounds*, 2015 WL 13759884 (D.D.C. Nov. 13, 2015).  Duplicative discovery is also permissible under the Federal Rules, including Rule 45.  *See Pearson v. Univ. of Chicago*, No. 3:20-mc-00092-CSH, 2021 WL 194725, at *6 (D. Conn. Jan. 20, 2021).  Courts have recognized two benefits of duplicative discovery.  First, the appearance of a duplicative document in a different individual or entity's possession is not only important to review the document; it establishes that the entity possessed the document and knew of its contents.  For example, if Respondent produces the same document as the Company, the fact that Respondent possessed the document at all may be relevant.  The court in *Thomas* explicitly articulated this benefit: "even if an email was produced from one witness's custodial inbox, producing the same email from another witness's inbox establishes that the second witness received the email (and helps counter any suggestion that he or she lacked knowledge of or did not receive the email in question)."  336 F.R.D. at 3.  Second, duplicative discovery can help vet the completeness of individual productions.  *See Pearson*, 2021 WL 194725, at *6 (citing *Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE), 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019)) ("Using discovery from a non-party to vet the fulsomeness of a party's discovery is permissible under the Federal Rules.").  Here, the Requested Discovery from Respondent will test the comprehensiveness of the Company's production.

### 2.    A Deposition Is Appropriate Here.

District courts are typically "generous" in granting depositions in Section 1782, even in cases with "tight schedule[s]" and other potential difficulties.  *In re Ex Parte Application of Porsche Automobil Holding SE*, No. 15-MC-417 (LAK), 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016) (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively

  
evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable").[16]   The court in *Hatoyama* discussed above ordered a deposition of Mr. Hatoyama in addition to granting the subpoena for documents in his personal possession.  *Liverpool Ltd. P'ship v. Hatoyama*, No. 21-mc-80031-SVK, ECF No. 54 at 1 (N.D. Cal. Aug. 27, 2021).  Given the role that Respondent played in this matter, his deposition is appropriate and will significantly aid the Cayman Court.  In another Section 1782 proceeding in aid of this very foreign proceeding the Central District of California just upheld Petitioners' right to take a 30(b)(6) deposition of Houlihan Lokey, the Financial Advisor to the Special Committee.  *See FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-mc-01019, ECF No. 56 (C.D. Cal. Jan. 6, 2022).

## III.    Expedited Compliance with the Requested Discovery Is Warranted.

In the event the Court grants Petitioners' Application, Petitioners request that the Court direct Respondent to produce responsive documents within 14 days of the grant of the application and submit to a deposition on a mutually agreeable date within a reasonable time after Respondent's confirmation of final production of documents.  Expedition of this Application and Respondent's time to comply with the Subpoena will permit sufficient time for (a) this Court's resolution of Petitioners' Application and any objections to the Subpoena; (b) Respondent's collection, review, and production of responsive documents; (c) Petitioners' counsel's review of documents produced by Respondent; and (d) Petitioners' timely submission of relevant documents to the court.  Expedition is important to ensure that disclosure obtained in this proceeding is able

---

[16] *See also In re Mother's Milk, Inc.*, No. 5:20–MC-00004–M, 2020 WL 2514315, at *5 (S.D.N.Y. May 15, 2020) (permitting 30(b)(6) deposition because it would "provide helpful evidence to the [foreign] court in moving the case forward"); *In re Accent Delight Int'l Ltd.*, No. 16–MC–125, 2018 WL 2849724 (S.D.N.Y. June 11, 2018) (same).

to be considered in advance of relevant deadlines in the Appraisal Proceeding.  Discovery in the

Appraisal Proceeding is already underway and expert reports by the Dissenting Shareholder's and

Company's experts (to which any disclosure obtained in this proceeding will be relevant) are due

in August 2022.  *See* Mangatal Decl, Ex. 1 at 51.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant its petition

for an order pursuant to 28 U.S.C. § 1782.

Dated: February 2, 2022                    Respectfully submitted,


                                           By: */s/ Amy Neuhardt*

                                           Amy L. Neuhardt
                                           William J. Harvey*
                                           Boies Schiller Flexner LLP
                                           1401 New York Avenue, N.W.
                                           Washington, DC 20005
                                           Telephone: (202) 237-2727
                                           Fax: (202) 237-6131
                                           aneuhardt@bsfllp.com
                                           wharvey@bsfllp.com

                                           Duane L. Loft*
                                           Brianna S. Hills*
                                           BOIES SCHILLER FLEXNER LLP
                                           55 Hudson Yards
                                           New York, NY 10001
                                           Telephone: (212) 446-2300
                                           Facsimile: (212) 446-2380
                                           dloft@bsfllp.com
                                           bhills@bsfllp.com

                                           Christine Mackintosh*
                                           GRANT & EISENHOFER P.A.
                                           123 S. Justison Street
                                           Wilmington, DE 19801
                                           Telephone: (302) 622-7081
                                           cmackintosh@gelaw.com

Ira A. Schochet*
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
ischochet@labaton.com

*_Pro hac vice_ application forthcoming

_Attorneys for Petitioners_